THOMPSON *v.* STATE OF INDIANA.

[No. 13,681. Filed April 24, 1929.]

548

*William D. Hardy*, for appellant.
*Arthur L. Gilliom*, Attorney-General, and *Bernard A. Keltner*, Deputy Attorney-General, for the State.

LOCKYEAR, J.—Appellant was convicted on an affidavit charging the maintenance of a place where intoxicating liquors were sold, manufactured, bartered and given away, and where persons were permitted to resort for the purpose of drinking intoxicating liquor as a beverage. Trial was had before a jury, the judge withholding judgment on the verdict of guilty until six days thereafter, and, the defendant failing to show any legal reason why the judgment should not follow the verdict, the court sentenced him to six months on the Indiana State Farm and assessed a fine of $500.

Two affidavits for a search warrant were filed on September 12, 1927, before Justice Abram Ancker, a justice of the peace, one of which reads as follows: "Comes now the undersigned affiant, who, upon his oath, says: 'I am a police officer of the City of Evansville, assigned to the duty of investigating violations of the Prohibition Law. On September 10, 1927, about 8:30 p. m., I saw five men go to the front door; they rang the door bell. The door was opened from the inside and these men went upstairs. At 9:30 p. m. same day, I saw two men come out of the front door of the below named place; these men were drunk and staggered down First Street to the McCurdy Hotel. On September 11, 1927 at

8:15 p. m., I saw an automobile drive up to the front of the below named place; two men got out of the car, went in the front door and upstairs; at 8:45 p. m., these men came out and got into car.   One man was carrying a package under his arm wrapped in a newspaper; this package had the appearance of wrapped bottles.   Guy Thompson lives at the below named place.   He has no visible means of support, no position and does not work. He has been convicted twice of violating the liquor law. The below named place has the reputation of being a place where intoxicating liquor is possessed and sold in violation of law and where persons are permitted to resort for the purpose of drinking intoxicating liquor as a beverage; that, because of the above fact, he has reasonable cause to believe and does believe that Guy Thompson has in his possession intoxicating liquor, and has in his possession intoxicating liquor being then and there sold, bartered and given away as a beverage, and being then and there kept with the intention to sell, barter, and give away the same in violation of the laws of this state, and has in his possession stills, implements, devices and property kept for the manufacture of intoxicating liquors, intended for use in violation of the laws of this state at the following premises:   The second floor of a three-story brick building, being commonly known and designated as 'No. 321½ south first street,' said three-story building being commonly known and designated as 'No. 321 south first street,' in the City of Evansville, Vanderburgh County, State of Indiana."

The other affidavit was substantially the same as the above, except it described the third floor of the same building.

We are of the opinion that the facts stated in the affidavit for a search warrant were sufficient to show probable cause existed sufficient to authorize the issuance of a search warrant, and

that the evidence found as a result of the search was properly admitted.

Charles Meeker testified, in substance: "I am a member of the police department. On the 12th day of September, 1927, I visited the premises at 321½ South First street in the city of Evansville, Indiana, with other officers to serve a search warrant. I gained entrance through a back stairway. Officer Broshears and one of the other officers went in the same way. Some of the other officers went in the front way. There is an outside stair that leads to the third floor. Two people came out of the door just as we got up there. Door was open, did not have to open it. The officers in front rang the bell. Mr. Thompson was then on the stairway. The back door was open and two men came out as we came to it. The other officers went in the front part of the house before we got around. We got to the third floor and served the search warrant on a colored porter in charge named Wade Grandstaff. He had some bottle beer in his hand. There were some other people there in the next room drinking beer in bottles, which was like this the man had in his hand. I then searched the third floor of the building."

Curtis Pitts said: "I was a member of the Booze Squad and visited the premises above described. I accompanied Officers Broshears, Meeker and others. I went into the building through the front door. There was an electric latch on the front door and we went on up stairs. We met Guy Thompson on the second floor and told him we had a search warrant for his place, and I served the search warrant on Guy Thompson on the second floor of that building. We went up to the third floor and Guy Thompson went up with me at the same time and I told him the officers were up there and had a search warrant for the third floor too. When I got to the third floor, Officers Broshears and Meeker and

Currigan were already there. There were four other fellows sitting at the table and had four glasses of beer in front of then."

Officer Norman Broshears testified that there are four rooms on the third floor, and that he searched the other rooms of the third floor and found 358 quarts of beer, one pint of colored spirits, 360 empty quart beer bottles, twenty-four empty Old Crow bottles, and twenty-five pints empty. Found beer cappers and jars for making beer. Also two large jars for making beer. Also a pint of Old Crow coloring fluid. I tested that to determine its alcoholic contents. It showed 110 proof or fifty-five per cent alcohol by volume. It is intoxicating liquor and used for beverage purposes. We tested the beer to determine its alcoholic content. Do not remember what it tested, but it is on the label two and one-fifth per cent. That is intoxicating liquor. All of the beer we found was of the same kind.

There was evidence of violation of the liquor laws prior to September 12, 1927. It was shown that on September 10, 1927, two men were seen drunk and staggering from the premises. Officer Curtis testified that at different times prior to September 12, 1927, he saw fellows entering the place and also leaving the place that seemed to be under the influence of intoxicating liquor. Evidence that persons resorted to place to drink liquor is sufficient to maintain the charge of nuisance. *Shelton* v. *State* (1921), 191 Ind. 228, 132 N. E. 594. There was evidence showing that the reputation of the place was bad.

Judgment affirmed.